UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHANE PATTON,

    Plaintiff,

    v.                                                  CAUSE NO. 3:23-CV-505-JD-MGG

KRISTINE REAGLE, JOHN GALIPEAU,
ARMSTRONG, ADAMS, STEPP,
GARCIA, MULLENCUP, and SNOW,

    Defendants.

OPINION AND ORDER

Shane Patton, a prisoner without a lawyer, filed a complaint alleging the defendants failed to protect him from his cellmate, who he says sexually and physically assaulted him three times over the course of three weeks. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of

other prisoners." *Id*. at 833. When an inmate is attacked by another inmate, the Eighth Amendment is violated only if "deliberate indifference by prison officials effectively condones the attack by allowing it to happen." *Haley v. Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). General requests for help, expressions of fear, and even prior attacks are insufficient to alert guards to the need for action. *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008). "[P]risons are dangerous places," as "[i]nmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

In the context of failure to protect cases, the Seventh Circuit has equated "substantial risk" to risks so great that they are almost certain to materialize if nothing is done." *Budz*, 393 F.3d at 911. In such cases, "a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). "Exercising poor judgment . . . falls short of meeting the standard of consciously disregarding a known risk to his safety." *Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997). The fact that a government official knows of an alleged wrong does not automatically mean he

or she is liable for failing to intervene. *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights . . . no prisoner is entitled to insist that one employee do another's job."). Prison officials who had actual knowledge of a substantial risk to a prisoner's health or safety may avoid liability if they responded reasonably even if the harm was not ultimately diverted. *Farmer*, 511 U.S at 844; *see also Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006).

Patton alleges that on December 3, 2021, he was sexually and physically assaulted by his cellmate, though he does not say what occurred during those assaults. He reported the assault to Officer Snow, who witnessed the assault and reported it to Sergeant Adams, who in turn reported it to Captain Armstrong. Patton reports that he told Captain Armstrong on December 4 that the attack was over his cellmate's "extortion attempt to obtain commissary." ECF 1 at 5. Captain Armstrong told Patton "I'll get him moved," but the move never happened, and he was assaulted a second time on December 10, 2021. *Id.*

Patton has plausibly alleged a failure-to-protect claim against Captain Armstrong. The captain was aware of the physical and sexual assault between the two cellmates but did not separate them, despite his assurance that he would. Officer Snow and Sergeant Adams, however, took reasonable steps in response to the assault by reporting the issue to their superiors.

Patton alleges the second attack occurred after his cellmate demanded that he pay "rent." ECF 1 at 5. When he refused, he says his cellmate then physically and sexually assaulted him in the shower, but he does not say what that entailed. After the

3

attack, the dorm floor officer called Sergeant Stepp and Sergeant Garcia. Garcia reportedly said, "he would recommend plaintiff to be moved." *Id.* No further action was taken, and Patton alleges he was attacked for a third time on December 17, 2021. *Id.*

The complaint does not state a claim against either Sergeant Stepp or Sergeant Garcia. Patton does not say what he told Sergeants Garcia and Stepp about what occurred during the second attack, so there is no basis to conclude either were aware of a future risk to Patton. Moreover, Sergeant Garcia reported that he would recommend that Patton be moved, and there is no indication in the complaint that he is responsible for that move not happening. If Patton has more information supporting a claim against these defendants, he may provide it in an amended complaint.

The third and final attack occurred on December 17, 2021. Patton says his cellmate used a sheet to block security cameras, then forced himself on Patton as he was lying in bed. Patton reported this assault to Officer Mullencup. No further attacks occurred before he was transferred to another facility. This does not state a claim against Officer Mullencup because after he was made aware of the third attack, Patton was not harmed again.

In addition, Patton sues Kristine Reagle, Commissioner of the Indiana Department of Correction, and John Galipeau, Warden of the Westville Correctional Facility, for neglecting their duty to take reasonable measures to remedy the conditions that "directly led" to the alleged assaults. ECF 1 at 7. However, personal liability requires more than allegations that the defendant is a supervisor or that the defendant knew of the plaintiff's issues and did not intervene. The doctrine of respondeat superior

4

does not apply to Section 1983 actions; to be individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) ("The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights."). Supervisors who are "merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones v. Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). They must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* Therefore, Patton does not state a claim against either Reagle or Galipeau.

For these reasons, the court:

(1) GRANTS Shane Patton leave to proceed against Captain Armstrong in his individual capacity for compensatory and punitive damages for failing to protect him from an attack by his cellmate that occurred on or around December 10, 2021, after being aware that Patton's cellmate posed a substantial risk of harm to him after a prior attack on December 7, 2021, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Kristine Reagle, John Galipeau, Adams, Stepp, Garcia, Mullencup, and Snow;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Captain Armstrong at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Armstrong to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 26, 2023

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT